## Village of Bay, Appellant, *v.* Gelvick et al., Appellees.

(Decided December 8, 1937.)

*Mr. B. C. Boer,* for appellant.
*Messrs. Conners & Clarke* and *Mr. William Gordon,* for appellees.

Guernsey, P. J.   This is an appeal on questions of law from a judgment of the Court of Common Pleas of Cuyahoga county, Ohio, sustaining demurrers to the petition, and, the plaintiff not desiring to plead further, dismissing the action and entering judgment for defendants.

The village of Bay, a municipal corporation, filed its petition in the Common Pleas Court against Emma Gelvick and others named in the caption thereof, for a declaratory judgment.  The petition, omitting the formal parts and copies of ordinances attached thereto as exhibits, is in the words and figures following, to wit:

"Now comes the plaintiff and for its cause of action says that it is a municipal corporation, situated within

the county of Cuyahoga and duly existing under and pursuant to the laws of the state of Ohio.

"The plaintiff further says that pursuant to authority granted by law to it, the plaintiff, acting by and through its duly constituted Planning Commission and its duly qualified Municipal Council, did on the fifth day of September, 1922, enact a certain Ordinance No. 379, dividing the entire area of the said municipality into zones or districts, in the interests of the public health, safety, convenience, comfort, prosperity and general welfare, for the limitation and regulation of the height, bulk, location and uses of buildings and other structures, and the uses of premises in such zones or districts. A copy of said Ordinance No. 379 is hereto attached marked 'Exhibit A' and by this reference made a part hereof.

"Plaintiff further says that subsequent thereto by Ordinance No. 918, duly adopted on December 29th, 1925, Ordinance No. 1639, duly adopted on July 5th, 1927, Ordinance No. 2972, duly adopted on August 5th, 1930, Ordinance No. 3370, duly adopted on February 16th, 1932, Ordinance No. 3458, duly adopted on April 5th, 1932, Ordinance No. 3886, duly adopted on June 5th, 1934, and Ordinance No. 3921, duly adopted on July 17th, 1934, said Ordinance No. 379 was in certain respects amended, but none of said amending ordinances, excepting Ordinance No. 3886, in any manner affects or modifies the regulations pertaining to and controlling the premises hereinafter described as being owned and operated by the defendants. A copy of said Ordinance No. 3886 is likewise hereto attached marked 'Exhibit B' and by this reference made a part hereof.

"Plaintiff further says that for several months last past the defendants have occupied, and they are at the time of the filing of this petition occupying, singly and in groups of two or three, as indicated by the addresses

of said defendants set forth in the caption of this petition, some as owners and others as tenants, certain improved premises situated within the village of Bay and further situated entirely either within the First Residence District or the Second Residence District as established by said Ordinance No. 379 and continued in effect by said Ordinance No. 3886. Said premises so occupied by the respective defendants are at the respective locations designated by the respective addresses shown in the said caption; some of said premises are improved with single buildings, originally built for and designed as single residences; one is improved with a set of buildings heretofore used as a private school (a permitted use under the provisions of said Zoning Ordinances); and others are improved with groups of houses and one or two room cottages and combination garages and cottages.

"Plaintiff further says that said defendants, singly and in groups, as above set forth, have furnished or caused to be furnished certain rooms in the buildings on the said premises occupied by them respectively in a number in each instance in excess of that necessary to accommodate the members of their respective families, and in addition to maintaining homes on said premises for their respective families are offering and furnishing to the members of the transient and traveling public (who have no intention of establishing a residence in said village, but seek and require only overnight lodging and accommodations while in transit) such lodging and accommodations, including in some instances meals, for hire; and all of the defendants, singly and in groups, as set forth, have from time to time maintained and some of said defendants still maintain signs upon the respective premises occupied by them at various distances from the highways upon which the premises front, and varying in size and design; some artificially lighted at nighttime, but

all bearing legends addressed to the traveling public such as 'Tourist Rest,' 'Tourists Accommodated,' 'Tourists,' 'Cottages for Rent by Day or Week,' and other similar legends, for the purpose of soliciting the traveling public to patronize them and purchase of them the accommodations so maintained; and such accommodations are so being sold by the defendants, individually and collectively, as set forth, to any and all members of the traveling public who apply, without previous agreement for accommodations and without any agreement as to the duration of their stay and without any intention on the part of the defendants or such members of the traveling public that the latter will establish there a settled place of abode.

''Said accommodations so sold to the public consist of night lodgings, the use of linens, bedding, general supplies, furniture and all other necessary equipment for night lodgings, chambermaid service, what corresponds to bellboy service, light, water, heat when necessary, meals and all other services and equipment usually supplied to transients and overnight guests at any hostelry or inn.

''Plaintiff further says that its duly elected officers are in some doubt as to the correct interpretation of the provisions of Sections 3 and 4 of said Ordinance No. 379, as now amended by Ordinance No. 3886 relating to the engaging in usual customary home occupations on premises situated in residence districts, but are of the opinion that the business of indiscriminately harboring and accommodating members of the traveling public as above set forth, constitutes the operation of a business which is prohibited by the terms of said sections; that the use of signs for the purpose of soliciting such business constitutes a violation of valid provisions of said sections; that the evils incident to the operation of such a business, such as the resulting traffic congestion and the influx of undesirable characters

into high class residence districts, make the prohibition of the use of signs which constitute solicitation of the public indiscriminately, germane to the public health, morals, and safety; but that the defendants do not share the view of the plaintiff in this respect and are of the opinion that the operations on their part as above described, do not violate the provisions of the said ordinance or that if they do, said ordinances are invalid and constitute an unreasonable restriction upon the use of the premises occupied by them.

"Wherefore, the plaintiff prays a declaratory judgment at the hands of this court:

"(1) Determining what constitutes an accessory use customarily incident to residence property mentioned in Section 4 of said ordinance;

"(2) Determining what constitutes a customary home occupation as set forth in said Section 4;

"(3) Determining specifically whether the accommodation of transient guests constitutes a customary home occupation or an accessory use customarily incident to residence property;

"(4) Determining whether the provision contained in said Section 4 that one or more rooms may be rented or table board furnished permits indiscriminate accommodation of transient guests as above set forth;

"(5) Determining the extent, if any, to which the accommodations and entertainment of transient guests constitute a customary home occupation or an accessory use of residence property;

"(6) Determining whether, if the provisions of said Section 4 prohibit the accommodation of transient guests, it is reasonable and therefore valid;

"(7) Determining whether the prohibition of the use of signs in connection with the operation of usual home occupations is a reasonable one and has relation to the public health, morals and safety and constitutes, therefore, a valid enactment: and

"(8) Determining in all other respects the status of the parties in the premises and determining the validity of said Sections 3 and 4 of said ordinance and interpreting the provisions thereof and for any and all further relief to which the plaintiff may be entitled in the premises."

Section 4 of Ordinance No. 3886, which contains the provisions as to which a declaratory judgment is asked, reads as follows:

"Section 4. Accessory Uses in Residence Districts.

"An accessory use customarily incident to residence property shall also be permitted in respectively a first, second or third residence district, provided such accessory use is located on the same lot with the building or use to which it is accessory. A private garage permitted as an accessory use, shall, however, not provide storage for more than one motor vehicle for each 3000 square feet of lot area. A store, trade or business shall not be permitted as an accessory use except that the office of a physician, dentist or surgeon may be located in the dwelling or apartment used by such physician, dentist or surgeon, as his private residence, and except that any person carrying on a customary home occupation, may do so in a dwelling or apartment used by him as his private residence, provided that no persons other than the members of his own household are employed in connection therewith, and provided that no window display or signboard is used to advertise such occupation. In a dwelling or apartment occupied as a private residence, one or more rooms may be rented or table board furnished provided no window display or signboard is used to advertise such use."

Following the filing of the petition, a demurrer and motion to dismiss was filed by the defendants thereto which, omitting the formal parts, is in the words following, to wit:

"Now come the defendants by their attorneys, de-

mur to plaintiff's petition, and further move this court to dismiss same.''

Subsequently Monroe J. Keyes and Jennie S. Keyes, defendants in the action, filed their separate demurrer, which is in the words and figures following, to wit:

"Now come the defendants, Monroe J. Keyes and Jennie S. Keyes, and demur to the petition against them in this cause, upon the following grounds, to wit:

"1. That the court has no jurisdiction of the subject of the action.

"2. That the plaintiff has not legal capacity to sue.

"3. That there is a misjoinder of the parties defendant.

"4. That several causes of action are improperly joined.

"5. That separate causes of action against several defendants are improperly joined.

"6. That the petition does not state facts which show a cause of action against these defendants."

Upon hearing, the separate demurrers by the defendants to the plaintiff's petition were sustained, and plaintiff not desiring to plead further, the cause was dismissed and judgment entered for the defendants for their costs, and it is this judgment from which this appeal is taken by the plaintiff.

As the demurrer last above mentioned comprehends all the grounds for demurrer raised by the demurrer first mentioned, the grounds of demurrer will be considered in the order they are set forth in that demurrer.

1. Section 12102-1, General Code, provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration

may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."

Under the provisions of this section jurisdiction is conferred on the Common Pleas Court to declare rights, status and other legal relations of the character sought in the petition in this action, and under the express provisions of the section such declaration may be made whether or not further relief is or could be claimed. The Common Pleas Court therefore had jurisdiction of the subject-matter notwithstanding the fact that in the petition the plaintiff seeks declaration of rights, status and other legal relations without further relief. The first ground of demurrer is therefore without merit.

2. Section 12102-2, General Code, provides:

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Under the provisions of Section 12102-13, General Code, the word "person" wherever used in this act shall be construed to mean any person, partnership, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever.

Section 12102-11, General Code, in part reads as follows:

"In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard * * *."

Under these express provisions a municipality is a person authorized under the provisions of Section 12102-2, General Code, to bring an action for a declaratory judgment, and is a necessary and mandatory party to any proceeding like the case at bar which involves the validity of a municipal ordinance.

The legal relations of the various defendants to the city and of the city to the defendants are clearly affected by the ordinance in question, and, the legal relations of the city being thus affected, it clearly comes within the provisions of Section 12102-2, authorizing the person so affected to have determined any question of construction or validity arising under the ordinance.

The utility of a declaratory judgment in this respect is commented on in the preface to Borchard on Declaratory Judgments, as follows:

"The utility of the declaratory judgment in the adjudication of conflicting claims between the citizen and the administration has also not been fully appreciated. It is not merely its speed, inexpensiveness, and simplicity which commend the declaration of rights in administrative law, nor yet the facts that it enables disputes to be determined in their incipiency before they have grown into devastating battles and that a decision is obtainable without the prior necessity of a purported violation of law or precarious leap in the dark. It is rather the fact (1) that administrative officials in the performance of their duties or in challenges to the validity of their acts require no coercive remedies or sanctions, but merely a declaration of their legal relations, in order to remain, or be kept, within the bounds of legality; and (2) that the procedural vehicles by which administrative acts are submitted to judicial review, namely, the extraordinary legal remedies and injunctions, have accumulated so vast a cargo of technicalities that the citizen desirous of challenging an administrative power or privilege finds himself fre-

quently engulfed in a procedural bog which bars him from his goal. Nor has the officer under present practice any effective method of himself raising the issue of legality when challenged, for he must usually await the litigating initiative of his adversary.''

At page 617 of the above work it is stated:

''A controversy between administration and citizen as to the latter's duty may, if the government considers that it is adequately protected, be determined by way of a declaration of the defendant's duty, which may, if desired, be combined with a request for coercive relief. Thus, the government has sued for a declaration that the defendant is under duty to maintain, repair, or widen a highway, to supply water, to remove an inmate from a poor house, to assume a surety's responsibility on bond for state funds in a defunct bank, to pay road and transit fees, to take out a license.

''Observance of the law is often conveniently secured by a declaration that the defendant has no right to do some specific act or maintain a claim alleged to be illegal. The demand may or may not be accompanied by request for an injunction, which often is denied whereas the declaration may be granted. Thus, the administration has sought declarations that the citizen has no right to erect or maintain certain structures, except as permitted by the government. * * *''

Under the express provisions of the statutes mentioned and under the authorities referred to it is clear that it is the purpose and intent of the Uniform Declaratory Judgments Act that a municipality such as the village of Bay has legal capacity to bring an action for the determination of any question of construction or validity arising under its ordinances and to obtain a declaration of rights, status or other legal relations thereunder, and consequently the second ground of demurrer is without merit.

3-4-5. The third, fourth and fifth grounds of the

demurrer, that there is a misjoinder of parties defendant; that several causes of action are improperly joined; and that separate causes of action against several defendants are improperly joined; will be considered together as they involve the same subject matter, and the same reasoning applies to each of them.

The determination as to whether these are valid grounds of demurrer involves a consideration of the characteristics of a declaratory judgment.

In the preface of Borchard on Declaratory Judgments, above referred to, it is stated:

"The main characteristic of the declaratory judgment, which distinguishes it from other judgments, is the fact that it conclusively declares the pre-existing rights of the litigants without the appendage of any coercive decree. So slight is the modification effected by dispensing with a writ of execution that the action for a declaration was adopted in England and elsewhere by mere rule of court. Anglo-American courts had indeed from time immemorial rendered judgments construing wills, interpreting deeds, trying disputed titles to property, real and personal, quieting title and declaring the non-existence of clouds thereon, declaring the nullity of instruments and legal relations, including marriage, and judgments in an infinite variety of proceedings which end in adjudications not requiring, and often not susceptible of, any execution.

"Thus the declaratory action, in extending the opportunity for such judgments to all legal relations, inaugurated no startling novelty, but merely recognized that individual and social peace and security are promoted by removing clouds from legal relations whenever, by attack, challenge, or denial, they are placed in doubt and uncertainty. The action implies a recognition of the fact that the social equilibrium is disturbed not merely by an overt violation of private

rights, but by a challenge which places them in doubt and uncertainty."

The removing of clouds from legal relations is analogous to the removing of clouds from the title to real estate. Although the defendants in the case at bar may, on account of their different situations, be differently affected by the declaration sought, this does not constitute a misjoinder of parties defendant, as, under the allegations of the petition, they each have legal relations to the village under the ordinance which is the subject-matter of the action. And as they are each interested in the subject-matter, although their interests are not identical, they are properly joined as defendants in the same manner as persons having interests in real estate differing in nature and degree are properly joined as defendants in an action to quiet title. There is only one cause of action which is for a declaratory judgment, and consequently there is no misjoinder of causes of action or of separate causes of action against several defendants, and all these grounds of the demurrer are also without merit.

6. In the instant case the plaintiff municipal corporation alleges its legal capacity to sue; the passage and existence of the ordinances concerning the provisions of which the declaration is sought; the specific provisions of the ordinance; the situs of the residences of the various defendants within the residence districts established by the ordinances, which brings the various defendants within the purview of the ordinances; the doing of various acts and the maintenance of various conditions by the various defendants on the premises occupied by them respectively coming within the scope of the ordinance; and the uncertainty arising from the construction placed on the provisions of such ordinance by the village and of the contrary construction placed thereon by the several defendants.

Under the statutes and authorities mentioned, these

allegations constitute a cause of action for the declaratory judgment sought by the plaintiff.

It is contended by the defendants, however, that as under the provisions of Section 12102-6, General Code, the court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding, that the sustaining of the demurrer by the trial court and dismissing the action constituted an exercise of the discretion vested in the trial court under this section, which is not reviewable by this court.

It will be noted that the discretion vested in the trial court under this section is limited to the judicial determination as to whether declaratory judgments, if rendered or entered, would terminate the uncertainty or controversy giving rise to the proceeding.

With reference to similar provisions of Uniform Declaratory Judgments Acts it is said:

"These rules merely embody the established Anglo-American practice in all jurisdictions and indicate both the practical and the remedial scope and limitations of the relief. Yet the discretion granted, however wide and unlimited in appearance, is a judicial discretion, hardened by experience into rule, and its exercise is subject to appellate review." Borchard on Declaratory Judgments, page 100.

That a controversy exists between the plaintiff and the defendants appears from the allegations of the petition, and that an uncertainty as to the interpretation of the provisions concerning which a declaration is sought exists between the plaintiff and the defendants also appears from the allegations of the petition. While the declaration sought would not necessarily terminate the controversy between the parties, it would terminate, at least so far as civil remedies are concerned, the interpretation to be placed upon the va-

rious provisions concerning which a declaration is sought. As the declaratory judgment sought would terminate the uncertainty, the petition states a cause of action and the trial court erred in sustaining the separate demurrers of the defendants and the exercise of its discretion in this respect is subject to review by this court.

In the brief of the appellees it is contended that there has been an adjudication, as between the city and one or more of the main defendants, of the rights of such named defendants under the ordinance which would bar the court from making a declaration as to such defendants. Such fact, if it is a fact, does not appear in the petition and consequently cannot be considered in connection with the demurrers to the petition.

For the reasons mentioned the judgment of the trial court will be reversed at costs of appellees and the cause remanded to the Common Pleas' Court with instructions to overrule the demurrers, and for further proceedings according to law.

*Judgment reversed and cause remanded.*

CROW and KLINGER, JJ., concur.

GUERNSEY, P. J., CROW and KLINGER, JJ., of the Third Appellate District, sitting by designation in the Eighth Appellate District.